UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WARMA WITTER KREISLER, Inc., individually and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>   -against-<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>        Defendant. | Case No.:  2:08-cv-05380 (JLL) (CCC)<br><br><br>Motion Return Date:<br>April 5, 2010<br><br>ORAL ARGUMENT REQUESTED |

**BRIEF IN SUPPORT OF DEFENDANT
SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

ANSA ASSUNCAO, LLP
(A Pennsylvania Limited Liability Partnership)
Two Tower Center Blvd., Suite 1600
East Brunswick, New Jersey 08816-1000
(732) 993-9850

CHADBOURNE & PARKE LLP
(A New York Limited Liability Partnership)
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100

Attorneys for Defendant
Samsung Electronics America, Inc.

# **TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................6

   A.    Allegations Of The FAC ...........................................................................6

   B.    Samsung's User's Guide Expressly States The Estimated Toner Cartridge Printing Yield And That Consumers Can Disregard The "Toner Empty" Message .....................7

ARGUMENT .....................................................................................................................8

   I.    LEGAL STANDARD ON MOTION TO DISMISS ....................................8

   II.    BECAUSE ILLINOIS LAW APPLIES TO PLAINTIFF'S CONSUMER FRAUD CLAIM, PLAINTIFF'S NJCFA CLAIM SHOULD BE DISMISSED .........................8

       A.   Illinois Has The Most Significant Relationship To This Case, Requiring Application Of The Illinois Consumer Fraud and Deceptive Business Practices Act .........................8

       B.   Illinois's Consumer Fraud And Deceptive Business Practices Act Conflicts With New Jersey's Consumer Fraud Act .........................9

       C.   Illinois Law Should Apply To The Illinois Plaintiff's Consumer Fraud Claim .........................14

   III.    The User's Guide Is Properly Before The Court ..........................................21

   IV.    THE FAC DOES NOT STATE A CLAIM FOR VIOLATION OF THE ICFDBPA, OR THE NJCFA (TO THE EXTENT APPLICABLE), BECAUSE IT DOES NOT ADEQUATELY ALLEGE DAMAGES/ ASCERTAINABLE LOSS .........................22

       A.   Any Claim Under The ICFDBPA Should Be Dismissed  For Failure To Adequately Plead Actual Damages .........................22

       B.   The NJCFA, To The Extent Applicable, Should Be Dismissed  For Failure To Adequately Plead Ascertainable Loss .........................25

   V.    CLAIMS UNDER OTHER STATES' CONSUMER  PROTECTION STATUTES SHOULD BE DISMISSED .........................26

CONCLUSION.....................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

Agostino v. Quest Diagnostics Inc.,
  256 F.R.D. 437 (D.N.J. 2009)................................................................12, 14, 15

Arcand v. Brother Int'l Corp.,
  ___ F. Supp. 2d ___, 2009 WL 4261085 (D.N.J. Dec. 3, 2009) .....................................passim

Baggett v. Hewlett-Packard Co.,
  582 F. Supp. 2d 126 (C.D. Cal. 2007) .......................................................................5

Baggett v. Hewlett-Packard Company,
  No. SACV 07-0667, 2009 WL 3178066 (C.D. Cal. Sept. 29, 2009).....................................4, 5

Bell Atlantic v. Twombly,
  550 U.S. 544, 127 S. Ct. 1955 (2007)........................................................................8

Cellular Dynamics, Inc. v. MCI Telecommunications Corp.,
  No. 94-C-3126, 1997 WL 285830 (N.D. Ill. May 23, 1997).....................................13

Cooper v. Samsung Electronics America, Inc.,
  No. 07-3853, 2008 WL 4513924 (D.N.J. Sept. 30, 2008)...........................................11, 19, 20

Forbes v. Eagleson,
  228 F.3d 471 (3d Cir. 2000).....................................................................................27

Great America Leasing Corp. v. Cozzi Iron & Metal, Inc.,
  76 F. Supp. 2d 875 (N.D. Ill. 1999) .........................................................................11, 13

In re Burlington Coat Factory Sec. Litig.,
  114 F.3d 1410 (3d Cir. 1997)...................................................................................21, 22

In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,
  No. 06-5774, 2009 WL 2043604 (D.N.J. July 10, 2009) ......................................27

Klaxon Co. v. Stentor Elec. Mfg. Co.,
  313 U.S. 487 (1941).................................................................................................9

Knox v. Samsung Electronics America, Inc.,
  No. 08-4308, 2009 WL 1810728 (D.N.J. June 25, 2009)..............................................passim

Morse v. Lower Merion School Dist.,
  132 F.3d 902 (3d Cir. 1997).......................................................................................8

Murry v. America's Mortgage Banc, Inc.,
    No. 03 C 5811, 2004 WL 5010145 (N.D. Ill. July 6, 2004) ......................................23

Nafar v. Hollywood Tanning Systems, Inc.,
    No. 08-3994, 2009 WL 2386666 (3d Cir. Aug. 5, 2009) ..............................9, 19, 20

Naporano Iron & Metal Co. v. Am. Crane Corp.,
    79 F. Supp. 2d 494 (D.N.J. 1999) ......................................................................25

Rolo v. City Investing Co. Liquidating Trust,
    155 F.3d 644 (3d Cir. 1998)..............................................................................27

Shaw v. Digital Equip. Corp.,
    82 F.3d 1194 (1st Cir. 1996)..............................................................................21

Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.,
    No. 08-5380, 2009 WL 4730187 (D.N.J. Dec. 3, 2009)............................... passim

Warriner v. Stanton,
    475 F.3d 497 (3d Cir. 2007).................................................................................9

Winer Family Trust v. Queen,
    503 F.3d 319 (3d Cir. 2007)...............................................................................21

STATE CASES

Barbara's Sales, Inc. v. Intel Corp.,
    879 N.E.2d 910, 227 Ill. 2d 45 (2007)...............................................................17

Beegal v. Park West Gallery,
    394 N.J. Super. 98 (App. Div. 2007) ..............................................15, 16, 17, 18

Cox v. Sears, Roebuck & Co.,
    138 N.J. 2 (1994) ..............................................................................................13

De Bouse v. Bayer AG,
    No. 107528, ___ N.E.2d ___, 2009 WL 4843362 (Ill. Dec. 17, 2009) ...........10, 25

Duran v. Leslie Oldsmobile, Inc.,
    594 N.E.2d 1355, 229 Ill. App. 3d 1032 (Ill. App. Ct. 1992) .................................13

Ekl v. Knecht,
    585 N.E.2d 156, 223 Ill. App. 3d 234 (Ill. App. Ct. 1991)......................................12

Elipas Enter., Inc. v. Silverstein,
    612 N.E.2d 9, 243 Ill. App. 3d 230 (Ill. App. Ct. 1993)........................................11

Fu v. Fu,
    160 N.J. 108 (1999) ................................................................................15, 16

Gennari v. Weichert Co. Realtors,
    148 N.J. 582 (1997) ......................................................................................13

Gerill Corp. v. Jack L. Hargrove Builders, Inc.,
    538 N.E.2d 530, 128 Ill. 2d 179 (1989) .......................................................23

International Union of Operating Engineers Local No. 68
    Welfare Fund v. Merck & Co., Inc.,
    192 N.J. 372 (2007) ......................................................................................11

Krautsack v. Anderson,
    861 N.E.2d 633, 223 Ill. 2d 541 (Ill. 2006) .................................................12

Margulies v. Chase Manhattan Mortg. Corp.,
    No. L-5812-03, 2005 WL 2923580 (N.J. Super. Ct. App. Div. Nov. 7, 2005) ................12, 20

Martin v. Allstate Insurance Co.,
    416 N.E.2d 347, 92 Ill. App. 3d 829 (Ill. App. Ct. 1981) ............................24

Martin v. Heinhold Commodities, Inc.,
    643 N.E.2d 734, 163 Ill. 2d 33 (Ill. 1994) ...................................................13

Mulligan v. QVC, Inc.,
    888 N.E.2d 1190, 382 Ill. App. 3d 620 (Ill. App. Ct. 2008)....................23, 24

N.J. Citizen Action v. Schering-Plough Corp.,
    367 N.J. Super. 8 (App. Div.) ......................................................................25

Oliveira v. Amoco Oil Co.,
    776 N.E.2d 151, 201 Ill. 2d 134 (Ill. 2002) ......................................10, 11, 23

P.V. ex rel. T.V. v. Camp Jaycee,
    197 N.J. 132 (2008) ..............................................................................9, 15, 20

Pratt v. Panasonic Consumer Electronics Co.,
    No. L-48-05, 2006 WL 1933660 (N.J. Super. Law Div. Jul. 12, 2006) ...................18

Price v. Philip Morris, Inc.,
    848 N.E.2d 1, 219 Ill. 2d 182 (Ill. 2005) ....................................................10

Romano v. Galaxy Toyota,
    399 N.J. Super. 470 (App. Div. 2008) ..........................................................26

Smith v. Prime Cable of Chicago,
    658 N.E.2d 1325, 276 Ill. App. 3d 843 (Ill. App. Ct. 1995) ....................................................11

Union Ink Co., Inc. v. AT&T Corp.,
    352 N.J. Super. 617 (App. Div.), certif. denied, 174 N.J. 547 (2002) .....................................26

Wernikoff v. Health Care Service Corporation,
    877 N.E.2d 11, 376 Ill. App. 3d 228 (Ill. App. Ct. 2007) ........................................................11

Zekman v. Direct American Marketers, Inc.,
    695 N.E.2d 853, 182 Ill. 2d 359 (Ill. 1998) ...........................................................................10

Zekman v. Direct American Marketers, Inc.,
    675 N.E.2d 994, 286 Ill. App. 3d 462 (Ill. App. Ct. 1997) ...............................................10, 11

Zorba Contractors, Inc. v. Housing Authority of the City of Newark,
    362 N.J. Super. 124 (App. Div. 2003) ...................................................................................13

**FEDERAL: STATUTES/RULES**

Fed. R. Civ. P. 9(b) ......................................................................................................... passim

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 5, 8, 22

**STATE: STATUTES/RULES**

815 Ill. Comp. Stat. 505/1 ....................................................................................................2

815 Ill. Comp. Stat. 505/10a ...........................................................................10, 12, 23, 25

N.J.S.A. 56:8-2.....................................................................................................................13

N.J.S.A. 56:8-19....................................................................................................................12

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 6 (1971) ....................................................14, 15, 19

Restatement (Second) of Conflict of Laws § 145 (1971) .............................................................16

Restatement (Second) of Conflict of Laws § 148 (1971) ................................................... passim

Defendant, Samsung Electronics America, Inc. ("Samsung"), respectfully submits this Brief in support of its Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

In granting, in part, Samsung's motion to dismiss Plaintiff's initial Complaint, this Court found that pleading deficiencies precluded a choice of law analysis with respect to Plaintiff's consumer fraud claim and warranted dismissal of that claim under Fed. R. Civ. P. 9(b), with leave for Plaintiff to file an amended complaint. See Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc., No. 08-5380, 2009 WL 4730187 (D.N.J. Dec. 3, 2009) (hereafter "WWK"). Plaintiff's FAC now asserts two counts against Samsung: violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count I), and violation of the consumer protection statutes of California, Florida, Illinois, Michigan, Missouri, New York and Washington, in addition to New Jersey (Count II).[1] As set forth below, the FAC confirms that the relevant consumer contacts in this case warrant application of Illinois's consumer fraud statute, not New Jersey's. In addition, and of dispositive import, regardless of which statute is applied, the FAC does not state a claim of damages or ascertainable loss, such that the entire FAC should be dismissed with prejudice.

*Choice of Law and Application of Illinois's Consumer Fraud Statute.* This Court held that the initial Complaint failed to specify, among other things, "where the printer at issue was purchased, where it was used, or where Plaintiff's actions—in purchasing replacement toner cartridges—took place." WWK, 2009 WL 4730187, at *5 (emphasis in original). In declining to

---

[1] Given the Court's dismissal of Plaintiff's unjust enrichment claim with prejudice, see WWK, 2009 WL 4730187, at *7, that claim is not alleged in the FAC nor addressed in this motion.

undertake a choice of law analysis, the Court held that "in order to properly engage in a choice of law analysis as to Plaintiff's consumer fraud claim the Court would need to consider, among other things, **where** the false representations were made and **where** plaintiff's actions in reliance on such false representations took place." Id. at *4 (citing Restatement (Second) of Conflicts, § 148) (emphasis in original).

Plaintiff's FAC, now, alleges what it failed to disclose before—namely, that Plaintiff, an Illinois corporation, "purchased a Samsung SCX4725FN laser printer in August 2008 at an Office Max located in Fairview Heights, Illinois for use in its office in O'Fallon, Illinois." FAC, ¶ 19. Plaintiff further alleges that in reliance on messages that the toner cartridge in its printer was "empty," id. ¶¶ 21, 22, it "prematurely discard[ed] the toner cartridges in use and purchas[ed] replacement toner cartridges" from an on-line retailer. Id. ¶ 23. As a result of these actions, Plaintiff allegedly "lost a portion of the benefit of the purchase of a full cartridge from Defendant." Id. ¶ 24.

In light of these allegations, Samsung renews its request that the Court apply the consumer protection statute of Illinois—the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), 815 Ill. Comp. Stat. 505/1 et seq.—because Illinois has the most significant relationship to this case and the issues it presents. Plaintiff (a) is located in Illinois, (b) bought the printer in Illinois, (c) from an Illinois retailer, (d) used the printer at Plaintiff's office in Illinois; and (e) replaced the toner cartridge in Illinois in alleged reliance upon the "empty" message displayed by its printer in Illinois. Plaintiff also purchased replacement cartridges online from an online retailer, although the FAC does not allege specifically the state from which such online purchases were made. See FAC, ¶ 23. Because all of the relevant consumer contacts took place in Illinois, the ICFDBPA should govern, and Plaintiff's NJCFA

2

claims should be dismissed.  Alternatively, should the Court find that Plaintiff's failure to allege

where its online purchases of replacement cartridges were made does not satisfy Rule 9(b) (see

WWK, 2009 WL 4730187, at *5), the Court should dismiss Plaintiff's consumer fraud claim,

with prejudice.

*Dismissal of Plaintiff's Consumer Fraud Claim for Failure to Adequately Plead Damages.*

Samsung further moves to dismiss the consumer fraud claim because as alleged in the FAC,

those causes of action do not state a claim for which relief can be granted.  Samsung does not

seek to revisit the Court's decision that, for purposes of a motion to dismiss, allegations that a

printer displayed an "empty" message when the toner cartridge allegedly is not empty are

sufficient to allege a misrepresentation.  See id. at *6; see also Knox v. Samsung Electronics

America, Inc., No. 08-4308, 2009 WL 1810728, at *6 (D.N.J. June 25, 2009).  Samsung also

does not seek an assessment of the case's underlying merits at this stage.  Rather, Plaintiff's

consumer fraud claim should be dismissed because Plaintiff has not alleged facts to support its

benefit of the bargain theory of damages or ascertainable loss.  See Arcand v. Brother Int'l Corp.,

___ F. Supp. 2d ___, 2009 WL 4261085, at *12-*13 (D.N.J. Dec. 3, 2009).

In Arcand, plaintiffs, on behalf of a putative class, alleged consumer fraud and related

violations based on the alleged shutdown of the printer toner cartridge when toner still remained

therein.  The Arcand plaintiffs' allegations of ascertainable loss, like the damages alleged here,

were predicated upon a benefit of the bargain claim, i.e., in purchasing the defendant's printer

cartridges, plaintiffs were sold a product worth considerably less than what the defendant

promised.  See id. at *12.  In dismissing the consumer fraud claim, the court stated:

> The flaw in Plaintiffs' theory of loss is that Plaintiffs do not allege why they
> believed that the toner's life was tied to the amount of ink in the cartridge,
> leaving this Court to speculate as to whether this expectation was objectively
> reasonable, and more importantly, whether what Plaintiffs received was

3

> ostensibly less than what [defendant] promised. What the Court can discern
> from Plaintiffs' allegations and the relevant documents incorporated by
> reference is that Plaintiffs were well aware, according to the user manual, that
> the toner cartridges printed up to a certain number of pages. Plaintiffs do not
> allege what they did receive, i.e., an amount of pages less than what the manual
> stated, nor do they allege what spurred them to believe that the printer and its
> cartridges were supposed to produce <u>more</u> than promised in the user manual.
> Thus, this Court cannot determine what loss, if any, Plaintiffs sustained as they
> fail to allege in the Complaint any particulars as to their own experiences with
> [defendant's] printers and cartridges. That Plaintiffs envisaged a toner cartridge
> which would last the life of the ink does not engender an ascertainable loss.
> Rather, the loss must be within the objective expectations of the consumer
> based on the representations made.

<u>Id</u>. (emphasis in original). Given these deficiencies, the court dismissed plaintiffs' NJCFA

claim.[2]

     The reasons underlying the <u>Arcand</u> court's dismissal are echoed in <u>Baggett v. Hewlett-</u>

<u>Packard Company</u>, No. SACV 07-0667, 2009 WL 3178066 (C.D. Cal. Sept. 29, 2009), another

printer cartridge putative class action. In <u>Baggett</u>, the court found that a printer manufacturer

could not be held liable under consumer fraud claims because, just like in <u>Arcand</u> and this case,

the plaintiff never alleged or argued that his printer failed to generate the represented average

page yield, such that plaintiff received "exactly" what he had purchased. The <u>Baggett</u> court, in

granting summary judgment and dismissing the case, held that:

> Plaintiff purchased a toner cartridge that promised 2,000 color pages. Notably,
> Plaintiff does not argue that the toner cartridge failed to produce 2,000 color
> pages, but argues instead that he was forced to replace his cartridge prematurely
> and could possibly have printed more pages with his original cartridge. Plaintiff

---

[2]    The <u>Arcand</u> court permitted plaintiffs to amend their NJCFA claims. <u>See</u> <u>Arcand</u>, 2009 WL
4261085, at *14. A review of the docket indicates that plaintiffs filed an amended complaint,
and briefing on a renewed motion to dismiss is underway.

received exactly what he paid for, and his "loss" of toner beyond that which he was promised cannot [support a California Unfair Competition Law claim].

Baggett, 2009 WL 3178066, at *3.[3]

The same result—dismissal—should obtain here. While Plaintiff's damages are predicated upon the allegedly lost benefit of the bargain, the FAC still does not allege "what [Plaintiff] did receive, i.e., an amount of pages less than what the manual stated, nor do[es] [it] allege what spurred [Plaintiff] to believe that the printer and its cartridges were supposed to produce more than promised in the user manual." Arcand, 2009 WL 4261085, at *12 (emphasis in original). Put another way, the four corners of the FAC do not set forth what Samsung represented that Plaintiff would receive from its toner cartridge (in terms of page yield or otherwise) and what Plaintiff actually received from the cartridge, and thus fails to allege any difference in value between the toner cartridges that Plaintiff allegedly purchased and the toner cartridges as represented by Samsung. Moreover, if the User's Guide for Plaintiff's printer is referenced, it reflects that although Samsung advised Plaintiff as to the number of pages the toner cartridge could yield, Plaintiff still does not allege that it failed to receive that represented page yield (by operation of the alleged "shut down" mechanism, see FAC, ¶ 15, or otherwise), or that Samsung's page yield representation was false.

------

[3]   This Court, in granting in part and denying in part Samsung's motion to dismiss in Knox, found "persuasive" the Baggett court's initial decision denying the motion to dismiss in that case. Knox, 2009 WL 1810728, at *7 (citing Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261 (C.D. Cal. 2007)). Samsung respectfully submits that Baggett's subsequent rejection, on legal grounds, of the precise legal theory upon which this case is premised warrants dismissal, even on this Rule 12(b)(6) motion.

## BACKGROUND

**A.      Allegations Of The FAC**

Plaintiff Warma Witter Kreisler, Inc., an Illinois corporation with its principal place of business in Illinois, purchased a Samsung SCX-4725FN model laser printer in Illinois from an Illinois retailer.  FAC, ¶¶ 5, 19.  Plaintiff thereafter used that printer in its office in Illinois. Id. ¶ 19.  Plaintiff alleges that its SCX-4725FN printer notifies consumers via a message on the printer display panel when the toner cartridge is "empty" and should be replaced.  Id. ¶ 14.

Plaintiff claims that Samsung falsely advised that the cartridge was "empty" when allegedly useable toner remained in the toner cartridge, and further alleges that the SCX and CLP model printers would "shut down . . . even though the toner cartridges still contain usable toner." Id. ¶ 16; see also id. ¶ 20.  It contends that Samsung utilized "smart chip" technology, which "require[d] Plaintiff and the Class to replace purportedly empty toner cartridges with Samsung brand toner cartridges."  Id. ¶ 3.  Plaintiff further alleges that when the printer's display panel indicated that the toner cartridge was empty, it replaced the toner cartridges while toner still remained in the cartridge, id. ¶¶ 21, 23, and thereby "lost a portion of the benefit of the purchase of a full cartridge from Defendant."  Id. ¶ 24.  In the FAC, Plaintiff alleges that it "took actions" based on these allegedly false messages, which actions—presumably undertaken in Illinois—"included prematurely discarding the toner cartridges in use and purchasing replacement toner cartridges online from Quill.com."  Id. ¶ 23.  Plaintiff ordered cartridges on three separate occasions, and each time Quill.com shipped the requested cartridges from Pennsylvania for use in Plaintiff's printer in Illinois.  Id.

Plaintiff brings this action on behalf of a putative nationwide class of "[a]ll persons or entities who have purchased or leased a Samsung Series SCX or Series CLP printer"; or, in the

alternative, "[a]ll persons or entities in California, Florida, Illinois, Michigan, Missouri, New Jersey, New York and Washington who have purchased or leased a Samsung Series SCX or Series CLP printer." Id. ¶ 26.

**B.    Samsung's User's Guide Expressly States The Estimated Toner Cartridge Printing Yield And That Consumers Can Disregard The "Toner Empty" Message**

The User's Guide for Plaintiff's SCX-4725FN laser printer informs consumers of the number of printed pages that a toner cartridge can be expected to generate before requiring replacement. See Declaration of Kenneth W. Colby, ¶¶ 2-5, Exh. A-C (attaching excerpts of User's Guides), at 12.3 ("Samsung Declaration"). The User's Guide plainly states the expected cartridge yield for the SCX-4725FN model used by the Plaintiff:

> Expected cartridge yield
>
> The toner cartridge yield depends on the amount of toner that print jobs require. Average yield for a new toner cartridge is 3,000 standard pages in accordance with ISO/IEC 19752 standard. (Average yield for the original toner cartridge supplied with the machine is 1,500 standard pages.)

Id., Exh. A-C, at 12.3; see also id. at 11.1, 14.1. The SCX-4725FN User's Guide informs consumers that "[t]he actual [page] number may also be different depending on the print density of the pages you print on, and the number of pages may be affected by operating environment, printing interval, media type and media size." Id. at 12.3. Nowhere in the FAC does Plaintiff allege that it failed to receive the estimated cartridge yield set forth by Samsung.

In addition, consumers using the same printer model Plaintiff bought may elect to disregard the "toner empty" message and continue printing with the additional/excess toner remaining in the cartridge, albeit at a lower print quality—and Samsung expressly tells consumers this. The SCX-4725FN User's Guide, for example, specifically states that "[w]hen the toner cartridge is nearly empty, the machine shows the Toner Empty Replace Toner message

7

and stops printing," the consumer can "set the machine to disregard this message when it appears and [] continue printing, even though print quality is not optimal." Id. at 12.6; see also id. at 12.5, 13.5.  Again, the FAC does not allege that this, or any of the foregoing statements in the User's Guide, are false or misleading.

## ARGUMENT

### I. LEGAL STANDARD ON MOTION TO DISMISS

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).  Although the Court accepts as true the well-pleaded allegations and all reasonable inferences that can be drawn from them, the Court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding the motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

### II. BECAUSE ILLINOIS LAW APPLIES TO PLAINTIFF'S CONSUMER FRAUD CLAIM, PLAINTIFF'S NJCFA CLAIM SHOULD BE DISMISSED

#### A. Illinois Has The Most Significant Relationship To This Case, Requiring Application Of The Illinois Consumer Fraud and Deceptive Business Practices Act

The Court should conduct a choice of law analysis because a conflict exists between the consumer fraud statute of Illinois (the ICFDBPA), where Plaintiff is incorporated, conducts its business, purchased its Samsung printer, used that printer and was allegedly injured, and that of New Jersey (the NJCFA), where Samsung (a New York corporation) is located.  Under New

8

Jersey's choice of law analysis, Illinois has the most significant relationship to this dispute. Therefore, Illinois law should govern.

In diversity cases such as this, the court applies the choice of law rules of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); see also Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007). New Jersey courts apply the "most significant relationship" test in resolving conflicts of law issues arising out of tort. See P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 135-36 (2008); see also Nafar v. Hollywood Tanning Systems, Inc., No. 08-3994, 2009 WL 2386666, at *4 (3d Cir. Aug. 5, 2009). Under that standard, as the New Jersey Supreme Court stated, "in balancing the relevant elements of the most significant relationship test, we seek to apply the law of the state that has the strongest connection to the case." Camp Jaycee, 197 N.J. at 155 (emphasis added).

The Restatement (Second)'s test requires that a court first determine whether an actual conflict exists. See id. at 143. If it does, the second step requires analysis of the relevant Restatement (Second) factors to determine the state with the most significant relationship to the parties and circumstances of the claim under consideration. Id.

### B. Illinois's Consumer Fraud And Deceptive Business Practices Act Conflicts With New Jersey's Consumer Fraud Act

Plaintiff asserts that Samsung violated the NJCFA. See FAC, ¶¶ 41-54. However, there are fundamental conflicts between the NJCFA and the statutory consumer fraud law in Plaintiff's home state, the ICFDBPA, with respect to, inter alia, the proof required to establish proximate cause; the circumstances regarding the availability of certain damages; the proof of defendant's alleged intent to deceive; and the availability of a jury trial.

*Proof of Proximate Causation/Reliance.* Under the ICFDBPA, a plaintiff asserting a private cause of action must plead and prove proximate causation to recover for the alleged

9

injury. See Oliveira v. Amoco Oil Co., 776 N.E.2d 151, 155, 201 Ill. 2d 134, 140 (Ill. 2002)

("[t]he 'as a result of' language in section 10a(a) imposes an obligation upon a private individual

seeking actual damages under the [ICFDBPA] to 'demonstrate that the fraud complained of

proximately caused' those damages in order to recover for his injury.") (quoting Zekman v.

Direct American Marketers, Inc., 695 N.E.2d 853, 861, 182 Ill. 2d 359, 373 (Ill. 1998)); see also

815 Ill. Comp. Stat. 505/10a(a).

      To plead and prove proximate causation under the ICFDBPA, the plaintiff "must allege

that he was, in some manner, deceived." Oliveira, 776 N.E.2d at 164, 201 Ill. 2d at 155.[4]  The

Illinois Supreme Court recently reaffirmed that a plaintiff's duty to "prove that actual damages

were suffered 'as a result' of the deceptive act imposes an obligation on the plaintiff to prove the

deceptive act proximately caused any damages." De Bouse v. Bayer AG, No. 107528, ___

N.E.2d ___, 2009 WL 4843362, at *3 (Ill. Dec. 17, 2009) (citing Oliveira, 776 N.E.2d at 155,

201 Ill. 2d at 149).

      As part of this proximate cause inquiry, Illinois courts have found that proof of reliance

on the alleged deception, while not expressly required by the statute, is nevertheless inextricably

intertwined with proof of proximate causation.  Therefore, "to maintain a private action under the

[ICFDBPA], a party must have relied on the wrong to some extent in order to establish

proximate cause." Zekman v. Direct American Marketers, Inc., 675 N.E.2d 994, 998, 286 Ill.

---

[4]  See also Price v. Philip Morris, Inc., 848 N.E.2d 1, 52, 219 Ill. 2d 182, 269 (Ill. 2005)
(confirming that "to meet the causation element of a[n] [ICFDBPA] claim, the members of
the class must have actually been deceived in some manner by the defendant's alleged
misrepresentations of fact.").

App. 3d 462, 468 (Ill. App. Ct. 1997), rev'd on other grounds, 695 N.E.2d 853, 860-61, 182 Ill.

2d 359 (Ill. 1998).  See also Wernikoff v. Health Care Service Corporation, 877 N.E.2d 11, 17,

376 Ill. App. 3d 228, 234 (Ill. App. Ct. 2007) (holding that "both consumer fraud and common

law fraud require that plaintiff rely on defendant's representations").  As the Illinois Supreme

Court has found, "'the theory of reliance is ambiguously present within the parameters of the

concept of proximate cause.'"  Oliveira, 776 N.E.2d at 162, 201 Ill. 2d at 154 (quoting Zekman,

675 N.E.2d at 998, 286 Ill. App. 3d at 468).[5]

The NJCFA, by contrast, does not require any proof of reliance upon any allegedly

deceptive statement in order to establish proof of ascertainable loss/injury.  See International

Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372,

389 (2007); Knox, 2009 WL 1810728, at *2.  This is a fundamental conflict that warrants

application of the ICFDBPA.  See Knox, 2009 WL 1810728, at *2; Cooper v. Samsung

Electronics America, Inc., No. 07-03853, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008).

*Damages/Attorneys' Fees*.  Under the ICFDBPA, the award of exemplary/punitive

damages is disfavored and available only "where the alleged misconduct is outrageous either

because the acts are done with malice or an evil motive or because they are performed with a

reckless indifference toward the rights of others."  Smith v. Prime Cable of Chicago, 658 N.E.2d

1325, 1336, 276 Ill. App. 3d 843, 858 (Ill. App. Ct. 1995).  Similarly, attorneys' fees to a

---

[5]    See also Great America Leasing Corp. v. Cozzi Iron & Metal, Inc., 76 F. Supp. 2d 875, 879
(N.D. Ill. 1999) (finding that reasonable reliance is required under the ICFDBPA); Elipas
Enter., Inc. v. Silverstein, 612 N.E.2d 9, 12, 243 Ill. App. 3d 230 (Ill. App. Ct. 1993) ("[no]
private person seeking money damages (or rescission of a contract) may seek relief under the
[ICFDBPA] without establishing justifiable or reasonable reliance").

prevailing party may be awarded under the ICFDBPA, "but the award of [attorneys'] fees is discretionary, not mandatory." Krautsack v. Anderson, 861 N.E.2d 633, 646, 223 Ill. 2d 541, 558 (Ill. 2006). See also Ekl v. Knecht, 585 N.E.2d 156, 166, 223 Ill. App. 3d 234, 246 (Ill. App. Ct. 1991). In addition, under the ICFDBPA, attorneys' fees and costs may be awarded to either a prevailing plaintiff or a prevailing defendant. See Krautsack, 861 N.E.2d at 646, 233 Ill. 2d at 558 (citing 815 Ill. Comp. Stat. 505/10a(c)). There are no provisions for treble damages for a private cause of action under § 10a of the ICFDBPA.

Conversely, the NJCFA mandates treble damages to a successful plaintiff. See N.J.S.A. 56:8-19 ("In any action under this section the court shall . . . award threefold the damages sustained by any person in interest."). Also, and unlike the ICFDBPA, the NJCFA mandates an attorneys' fee award to a successful plaintiff; there is no discretion as to whether attorneys' fees should be awarded under the NJCFA, and no provision for an award to a prevailing defendant. See id. ("In all actions under this section . . . the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit."). Courts have found conflicts between the NJCFA and other states' consumer fraud statutes with regard to issues such as the damages that may be awarded. See, e.g., Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 462 (D.N.J. 2009) (noting conflicts between NJCFA and consumer fraud statutes of other states given "variations [] in the award of damages, especially the decision or ability of a court to award punitive or treble damages"); Margulies v. Chase Manhattan Mortg. Corp., No. L-5812-03, 2005 WL 2923580, at *7 (N.J. Super. Ct. App. Div. Nov. 7, 2005) (noting conflict between NJCFA and Maryland CPA since the Maryland CPA, like the ICFDBPA, "does not provide for treble damages and does not provide for mandatory attorney's fees, but allows for their award in the court's discretion").

12

*Proof of Intent.* Under the ICFDBPA, a plaintiff is not required to prove a defendant's intent to deceive. See Duran v. Leslie Oldsmobile, Inc., 594 N.E.2d 1355, 1361-62, 229 Ill. App. 3d 1032, 1040-41 (Ill. App. Ct. 1992). By contrast, the NJCFA requires proof of intent/ knowledge by any person who makes a "knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission . . ." N.J.S.A. 56:8-2; see also Gennari v. Weichert Co. Realtors, 148 N.J. 582, 606-07 (1997); Cox v. Sears, Roebuck & Co., 138 N.J. 2, 17-18 (1994) ("[W]hen the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud.") (emphasis in original).

*Availability of Jury Trial.* Another fundamental difference between the ICFDBPA and the NJCFA is that the Illinois courts have determined that the ICFDBPA does not afford the private plaintiff the right to a jury trial. As the Illinois Supreme Court ruled, "the [ICFDBPA] does not provide for jury trials. In fact, the working of the statute, and its legislative history, indicate that the legislature intended the action to be tried without a jury." Martin v. Heinhold Commodities, Inc., 643 N.E.2d 734, 755, 163 Ill. 2d 33, 76 (Ill. 1994). See also Great America Leasing Corp. v. Cozzi Iron & Metal, Inc., 76 F. Supp. 2d 875, 880 (N.D. Ill. 1999) (stating that "there is no right to a jury trial under the [ICFDBPA]") (citing Martin); but see Cellular Dynamics, Inc. v. MCI Telecommunications Corp., No. 94-C-3126, 1997 WL 285830, at *7-*9 (N.D. Ill. May 23, 1997) (permitting jury trial of various claims, including ICFDBPA claim). New Jersey courts, however, have expressly found that parties may have a jury trial of NJCFA claims. See Zorba Contractors, Inc. v. Housing Authority of the City of Newark, 362 N.J. Super. 124, 131 (App. Div. 2003) (concluding that parties to a consumer fraud case may have a trial by

jury).  The provision for a jury trial, or the lack thereof, is another key conflict between the

ICFDBPA and the NJCFA.

### C.  Illinois Law Should Apply To The Illinois Plaintiff's Consumer Fraud Claim

As noted <u>supra</u>, New Jersey's choice of law principles require application of the

Restatement (Second)'s most significant relationship test.  Section 148 of the Restatement

(Second) applies to a conflict of laws analysis for claims based on alleged consumer fraud or

misrepresentation.  <u>See</u> <u>Agostino</u>, 256 F.R.D. at 462.  An analysis of both § 148(1) and § 148(2)

demonstrate that in this case, the ICFDBPA applies to Plaintiff's consumer fraud claim.

*Analysis Under § 148(1)*.  Section 148(1) provides:

> When the plaintiff has suffered pecuniary harm on account of his reliance on the
> defendant's false representations and when the plaintiff's action in reliance took
> place in the state where the false representations were made and received, the
> local law of this state determines the rights and liabilities of the parties unless,
> with respect to the particular issue, some other state has a more significant
> relationship under the principles stated in § 6 to the occurrence and the parties, in
> which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 148(1) (1971).

Under § 148(1), the state in which the "plaintiff acted in reliance on a defendant's fraud is

presumed to have the predominant relationship to the parties and the issues in the litigation."

<u>Agostino</u>, 256 F.R.D. at 462.  Moreover, "the state selected by application of the rule of

Subsection (1) will usually be the state of dominant interest, since the two principal elements of

the tort, namely, conduct and loss, occurred within its territory."  Restatement (Second) § 148(1)

cmt. d.  In the FAC, Plaintiff alleges that it bought the printer in Illinois and used the printer in

its Illinois office (FAC, ¶ 19), and that in reliance upon the alleged misrepresentation that it

received when using the printer (<u>i.e.</u>, the "empty" message displayed by the printer), it replaced

toner cartridges that were not in fact empty.  <u>Id</u>. ¶¶ 21-24.  Because Plaintiff's reliance and

conduct in response to the alleged misrepresentations occurred where Plaintiff bought and used the printer, i.e., Illinois, it is Illinois law that applies. There is, then, a presumption that Illinois law applies to Plaintiff's consumer fraud claim that can be rebutted only if an analysis under § 6 of the Restatement (Second) determines that some other state has a more significant relationship.

A choice of law analysis under § 6(2) further compels application of the ICFDBPA.[6] "Reduced to their essence, the section 6 principles are: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." Camp Jaycee, 197 N.J. at 147.

These factors confirm that the ICFDBPA applies. Stated briefly, (1) interests of interstate comity "clearly favor the application of the law of each prospective class member's state of residence," which, with respect to Plaintiff here, is Illinois. Agostino, 256 F.R.D. at 463. While (2) the parties' interests and expectations factor heavily in contract cases, they play little role in a choice of law analysis of a tort claim like fraud. See Fu v. Fu, 160 N.J. 108, 123 (1999). As to (3), the interests underlying consumer protection law (which in both Illinois and New Jersey is to deter consumer fraud) can be promoted via application of Illinois law, especially since the consumer is located in Illinois. See Agostino, 256 F.R.D. at 463. Concerns relating to (4) judicial administration generally yield to the stronger state interest implicated by the other

---

[6] Section 6(1) of the Restatement (Second) is inapplicable to a choice of law analysis involving the NJCFA. That subsection requires courts to follow a "statutory directive" on choice of law contained in its own state's statute. See § 6(1) ("[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law"). No such provision is contained in the NJCFA.

15

factors, and do not influence the analysis here.  See Beegal v. Park West Gallery, 394 N.J. Super. 98, 120 (App. Div. 2007).

Finally, analysis of (5) the competing state interests in turn requires examination of the "qualitative nature" of a state's contacts and determination of whether application of a state's law will further the policies that law was intended to promote.  See Beegal, 394 N.J. Super. at 121; Fu, 160 N.J. at 125.  This analysis is conducted by reviewing the factors in § 145(2) of the Restatement (Second), which are (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.  See Restatement (Second) § 145(2); see also Beegal, 394 N.J. Super. at 121.

These factors all point toward application of the ICFDBPA.  The alleged injury, and the conduct allegedly causing it, occurred in Illinois, where Plaintiff is located and purchased/used the printer.  See, e.g., Beegal, 394 N.J. Super. at 125 ("the place of business or residence of the plaintiff is more important than are similar contacts on the part of the defendant") (citing Restatement (Second) § 148(2) cmt. i).  Moreover, the place of the relationship between Plaintiff and Samsung could only have been Illinois, as Plaintiff does not allege that its employees ever traveled to New Jersey with respect to the purchase of the printer or toner cartridges.  Thus, Illinois has interests in Plaintiff's consumer fraud claim that outweigh any potential interest of New Jersey.

*Analysis Under § 148(2).*  An analysis conducted under § 148(2) yields the same result. That subsection provides:

> When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider

16

such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:  (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) § 148(2).

The § 148(2) factors dictate application of the ICFDBPA.  Addressed briefly, the FAC makes clear that Plaintiff received the "empty" message in Illinois (factor (b)) where it used its printer (FAC, ¶ 19), and further that Plaintiff acted in reliance upon the "empty" message in Illinois (factor (a)) by replacing the toner cartridge with a new one (id. ¶ 21).[7]  In addition, the "tangible thing[s]" at issue in the FAC (factor (e))—the printer and the cartridges installed in it— were located and used at Plaintiff's Illinois office.[8]  The residency, place of incorporation and place of business factors (factor (d)) further warrant application of Illinois law, since Plaintiff is an Illinois corporation doing business in Illinois (FAC, ¶¶ 5, 19).  See Restatement (Second)

---

[7]    The FAC further alleges that Plaintiff ordered replacement cartridges from an online retailer (id. ¶ 23) for use in Plaintiff's printer in Illinois, but does not allege where Plaintiff actually made those online purchases.  As noted above, should the Court find that this failure violates Rule 9(b) and this Court's prior decision, it should dismiss the case with prejudice.

[8]    See, e.g., Barbara's Sales, Inc. v. Intel Corp., 879 N.E.2d 910, 923, 227 Ill. 2d 45, 67 (2007) (Illinois Supreme Court, analyzing Restatement (Second) § 148(2), held that application of the law of plaintiffs' home states was favored because plaintiffs received and relied on defendant's representations in their home states).  See also Restatement (Second) § 148 cmt. g (the place where representations made and received are not as important contacts "as is the place where the plaintiff acted in reliance on defendant's representations").

17

§ 148 cmt. i. ("The domicil, residence and place of business of the <u>plaintiff are more important</u> than are similar contacts on the part of the defendant.") (emphasis added).[9]

In this case, each factor in the § 148(2) Restatement analysis squarely favors application of the ICFDBPA:  Plaintiff acted in reliance upon Samsung's alleged representations in Illinois; Plaintiff received the alleged representations in Illinois; Samsung made the alleged representations in Illinois (<u>e.g.</u>, "Plaintiff, relying on the representations made by Samsung on the LCD screen," FAC, ¶ 21—<u>i.e.</u>, the LCD screen of the printer located in Illinois); Plaintiff is an Illinois corporation; and the printer and toner cartridges were used in Illinois.

Plaintiff now alleges that "[o]n information and belief" Samsung exercises control over all decisions relating to the design and manufacture of the laser printers at issue from its offices in New Jersey and that New Jersey is the state "from which Defendant's alleged misconduct emanated."  FAC, ¶¶ 10, 36; <u>see also id</u>. ¶¶ 13, 35, 39, 44.  Samsung does not dispute the merits of these allegations now.  However, that Plaintiff has added various allegations which each say the same thing—that Samsung's office is located in New Jersey such that any allegedly relevant conduct by Samsung took place in New Jersey—does not tip the scales of "qualitative contacts" in favor of application of the NJCFA.  <u>See, e.g., Pratt v. Panasonic Consumer Electronics Co.</u>, No. L-48-05, 2006 WL 1933660, at *13 (N.J. Super. Law Div. Jul. 12, 2006) (in a putative class

---

[9]   The place where the plaintiff is to render performance under a contract which plaintiff has been induced to enter by the alleged false representations of the defendant (factor (f)) is not applicable to the choice of law analysis in this case.

action, the court ruled that any representations made to the plaintiff were made in Florida where he resided, not in New Jersey where defendant had offices).

Indeed, as this Court has previously held in Knox and Cooper, the NJCFA does not apply under a choice of law analysis where the named plaintiff was an out-of-state consumer having purchased a Samsung product in plaintiff's home state and "the contacts in New Jersey were limited to 'the location of Samsung's headquarters, and substantial decision-making, marketing, and distribution efforts.'" Knox, 2009 WL 1810728, at *4 (quoting Cooper, 2008 WL 4513924, at *5). At most, these allegations establish that New Jersey's only connection to the litigation is that the principal office of Samsung Electronics America is here. This limited New Jersey nexus is not sufficient to warrant application of New Jersey law when all other contacts point to the consumer's home state. See Knox, 2009 WL 1810728, at *2-4; see also Cooper, 2008 WL 4513924, at *7.

The Third Circuit's decision in Nafar v. Hollywood Tanning Systems, Inc., No. 08-3994, 2009 WL 2386666 (3d Cir. Aug. 5, 2009), provides significant guidance on the choice of law analysis to be undertaken where, as here, the potential class members in a putative consumer fraud class action hail from numerous states. Nafar, which reversed a district court order that had certified a nationwide class and sought to apply the NJCFA to the claims of all putative class members, reaffirmed the "strong presumption under Section 148 that the consumer fraud law of each class plaintiff's home state should apply to his respective claim." Nafar, 2009 WL 2386666, at *5. The Third Circuit also was "referred to no Section 6 considerations that would appear to rebut the presumption that each prospective plaintiff's home state has the most significant interest in litigating its resident's claims." Id.

19

Thus, the Third Circuit's decision in <u>Nafar</u> confirms this Court's conclusions in <u>Knox</u> and <u>Cooper</u>—that the state with the "strongest connection to the case" (<u>Camp Jaycee</u>, 197 N.J. at 155) is the home state of the plaintiff, because the plaintiff's home state has the greatest interest in litigating its residents' claims and since all the critical consumer contacts took place in the plaintiff's home state.  <u>See Nafar</u>, 2009 WL 2386666, at *5.  In <u>Knox</u>, this Court found that Georgia's consumer fraud act applied, rather than the NJCFA, since the consumer contacts in that case—a Georgia plaintiff purchased a printer and toner cartridges in a series of transactions in Georgia—warranted application of Georgia's statute.  <u>See Knox</u>, 2009 WL 1810728, at *4.  The Court reached the same result in another action involving consumer fraud claims against Samsung, finding that Arizona's consumer fraud statute applied, because the plaintiff "is an Arizona resident who purchased a [Samsung] television for use in Arizona at an Arizona retailer."  <u>See Cooper</u>, 2008 WL 4513924, at *7.[10]

The Court's foregoing analysis, and conclusions, apply with equal vigor here because all of the consumer contacts support application of Illinois consumer protection law.  Indeed, the FAC makes it clear that Illinois has the most significant relationship both to this dispute and to ensuring that its laws apply to product sales in Illinois and to the events allegedly flowing from those sales.  Therefore, the Court should apply the ICFDBPA and dismiss the NJCFA claim.  <u>See</u> <u>Margulies</u>, 2005 WL 2923580, at *9 (affirming dismissal of NJCFA claims given application of law of Maryland, where plaintiff resided and where subject loan was closed).

_____

[10]   The plaintiff in <u>Cooper</u> appealed certain portions of this Court's decision on Samsung's motion to dismiss in <u>Cooper</u>, including its decision with respect to choice of law issues.  That appeal was argued on November 9, 2009 and remains <u>sub judice</u>.

III.   **THE USER'S GUIDE IS PROPERLY BEFORE THE COURT**

The Court did not consider the User's Guide attached to Samsung's initial motion to dismiss, finding that there was no indication that Plaintiff had received that copy of the User's Guide or that that version accompanied the particular printer model purchased by Plaintiff. See WWK, 2009 WL 4730187, at *11. Such concerns are not present here, because Samsung has attached relevant excerpts from each of the three versions of the User's Guide used with this printer. See Samsung Declaration, ¶¶ 2-5, Exh. A-C; see also Arcand, 2009 WL 4261085, at *3-*4 (considering user's manual excerpts).

The Third Circuit has stated that "a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). See also Winer Family Trust v. Queen, 503 F.3d 319, 328-29 (3d Cir. 2007) (same). Where the FAC alleges that the message displayed by Plaintiff's printer is false and misleading (see, e.g., FAC, ¶¶ 1, 2, 13, 15, 16, 20-23), there can be no doubt that the User's Guide, which contains that message, as well as an explanation of it along with actions the user may take in response to it, is "integral" to the FAC.

In its initial Complaint, Plaintiff avoided any mention of where it purchased and used its printer and replacement cartridges, omissions which were not countenanced by this Court. In the FAC, Plaintiff has again studiously avoided reference to the User's Guide. Plaintiff should not be permitted to deliberately craft its pleading to avoid any express reference to the User's Guide while still complaining about the very messages that are contained, and explained, in that manual. See In re Burlington Coat Factory, 114 F.3d at 1426 (a plaintiff may not "prevent a

21

court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them").  The User's Guide is integral to Plaintiff's claim because it contains, among other things, what Samsung represented to the Plaintiff in terms of the use of the toner in the cartridge.  Because the User's Guide is integral to Plaintiff's claims, the Court may properly consider the User's Guide in resolving this motion.

## IV.    THE FAC DOES NOT STATE A CLAIM FOR VIOLATION OF THE ICFDBPA, OR THE NJCFA (TO THE EXTENT APPLICABLE), BECAUSE IT DOES NOT ADEQUATELY ALLEGE DAMAGES/ASCERTAINABLE LOSS

The Court previously deemed Samsung's argument that its actions "were neither unfair nor deceptive in light of the contents of the User Guide" to require an assessment of the merits of Plaintiff's claim, which the Court found inappropriate at the motion to dismiss stage.  WWK, 2009 WL 4730187, at *6.  At bottom, the Court found that the initial Complaint's allegation (repeated in the FAC) that the printer's display of the term "empty" when the toner cartridge was allegedly not empty was sufficient to withstand a Rule 12(b)(6) motion.  See id.

Samsung does not reargue these points now.  Rather, it seeks dismissal because Plaintiff has failed to allege that it suffered any actual damages, i.e., that there was any difference in value between the toner cartridges Plaintiff received and the toner cartridges as represented by Samsung.  While Plaintiff may allege that its printer displayed an "empty" message when the toner cartridge in it was not in fact "empty," that allegation is not sufficient to withstand a motion to dismiss where—as here—Plaintiff expressly seeks benefit of the bargain damages.

### A.    Any Claim Under The ICFDBPA Should Be Dismissed For Failure To Adequately Plead Actual Damages

As noted above, "it is well settled that in order to maintain a private cause of action under the [ICFDBPA], a plaintiff must prove that she suffered actual damage as a result of a violation

22

of the Act." <u>Mulligan v. QVC, Inc.</u>, 888 N.E.2d 1190, 1196, 382 Ill. App. 3d 620, 627 (Ill. App. Ct. 2008). <u>See also</u> <u>Oliveira</u>, 776 N.E.2d at 155, 201 Ill. 2d at 140 (same); 815 Ill. Comp. Stat. 505/10a(a) (same). Violations of the ICFDBPA that, as in this case, are premised on alleged fraud must be pled with particularity under Fed. R. Civ. P. 9(b). <u>See</u> <u>Murry v. America's Mortgage Banc, Inc.</u>, No. 03 C 5811, 2004 WL 5010145, at *6 (N.D. Ill. July 6, 2004).

Here, Plaintiff alleges that when its printer displayed the "empty" message, Plaintiff, "relying" on that message, proceeded to replace the toner cartridge in its printer with a new one. FAC, ¶¶ 21-22. "As a result of these actions, Plaintiff lost a portion of the benefit of the purchase of a full cartridge from Defendant." <u>Id.</u> ¶ 24. <u>See also</u> <u>id.</u>, ¶ 49 (asserting that Plaintiff "over[paid] for cartridges that [it] cannot fully use"); <u>id.</u> ¶ 19 (alleging that Plaintiff "cannot use the full amount of toner provided in the cartridges").

Plaintiff asserts entitlement to benefit of the bargain damages. Illinois courts have adopted the benefit of the bargain rule "whereby damages are generally calculated by assessing the difference between the actual value of the property sold and the value the property would have had at the time of the sale if the representations had been true." <u>Mulligan</u>, 888 N.E.2d at 1196, 382 Ill. App. 3d at 627 (citing <u>Gerill Corp. v. Jack L. Hargrove Builders, Inc.</u>, 538 N.E.2d 530, 538, 128 Ill. 2d 179, 195 (1989)). In other words, the rule is "based on the theory that a defrauded party is entitled to the benefit of his bargain in a transaction and should be placed in the same position that he would have occupied had the false representations on which he acted been true." <u>Id.</u>; <u>see also</u> <u>Martin v. Allstate Insurance Co.</u>, 416 N.E.2d 347, 352, 92 Ill. App. 3d 829, 835 (Ill. App. Ct. 1981) (same).

The FAC does not allege sufficient facts to state a claim for benefit of the bargain damages. At most, Plaintiff alleges that it has not received the benefit of the allegedly "useable"

toner it contends remains after the "empty" message was displayed. But the FAC does not allege any difference in value between the toner cartridges that Plaintiff purchased and the toner cartridges as represented by Samsung. That is, Plaintiff does not allege (1) what Samsung allegedly promised to it in terms of use of the toner in the cartridge, (2) what Plaintiff actually received from the cartridge (in terms of page yield or otherwise), and (3) how what Plaintiff received was less valuable than what Samsung represented. As noted in <u>Arcand</u>, and applicable here, the "flaw in Plaintiffs' theory of loss is that Plaintiffs do not allege why they believed that the toner's life was tied to the amount of ink in the cartridge, leaving this Court to speculate as to whether this expectation was objectively reasonable, and more importantly, whether what Plaintiffs received was ostensibly less than what [defendant] promised." <u>Arcand</u>, 2009 WL 4261085, at *12. These pleading failures alone, even without resort to the User's Guide, demonstrate that Plaintiff cannot proceed with its ICFDBPA claim.

A look at the User's Guide only reinforces that conclusion. The User's Guide advises Plaintiff as to the page yield of the toner cartridge used in Plaintiff's printer. The FAC, however, does not allege that what Plaintiff received in terms of page yield was less than what Samsung stated in the manual, does not allege that its printer stopped printing before reaching the represented page yield, and does not allege "what spurred [Plaintiff] to believe that the printer and its cartridges were supposed to produce <u>more</u> than promised in the user manual." <u>Id.</u> (emphasis in original). This lack of particulars warranted dismissal in <u>Arcand</u>, since the court could not determine what, if any, loss those plaintiffs sustained. <u>Id.</u> The same deficiencies are present here. Plaintiff's FAC, like its initial Complaint, carefully avoids any express mention of the User's Guide. But by electing to avoid reference to it, or to the page yield that Samsung

24

represented therein, Plaintiff cannot allege that it received less value from the toner cartridges it purchased than what Samsung represented.

As noted above, a plaintiff asserting an ICFDBPA claim must allege that it "suffer[ed] actual damages as a result of" the defendant's conduct, apart from the mere fact that it was deceived. See 815 Ill. Comp. Stat. § 505/10a(a); see also De Bouse, 2009 WL 4843362, at *3 ("plaintiff must prove that actual damages were suffered 'as a result' of the deceptive act"). In this case, Plaintiff alleged that it was deceived when its printer displayed an "empty" message when, according to Plaintiff, the toner cartridge was not in fact "empty." However, since Plaintiff's allegations do not support any claim for damages, Plaintiff has not alleged a viable claim under the ICFDBPA.

**B.**   **The NJCFA, To The Extent Applicable, Should Be Dismissed For Failure To Adequately Plead Ascertainable Loss**

Even if the NJCFA applied to this case, which it does not, Plaintiff's claim for violation of the NJCFA should be dismissed. To bring a private cause of action under the NJCFA, a plaintiff must plead: (1) an unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss. See N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13 (App. Div.), certif. denied, 178 N.J. 249 (2003). Violations of the NJCFA must be pled with particularity under Fed. R. Civ. P. 9(b). See Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999). Samsung does not reargue its contention that Plaintiff has failed to plead adequately each of the foregoing elements. Rather, Plaintiff's NJCFA claim should be dismissed for failure to adequately plead ascertainable loss.

"An ascertainable loss occurs when a consumer receives less than what was promised." Union Ink Co., Inc. v. AT&T Corp., 352 N.J. Super. 617, 646 (App. Div.), certif. denied, 174

25

N.J. 547 (2002). Plaintiff's claim of ascertainable loss proceeds here under a benefit of the bargain analysis (i.e., that the toner cartridges purchased by Plaintiff were worth less than originally promised). To plead loss of the benefit of the bargain under the NJCFA, a plaintiff must allege "'the difference between the [product] she received and the [product] as represented at purchase.'" Arcand, 2009 WL 4261085, at *12 (quoting Romano v. Galaxy Toyota, 399 N.J. Super. 470, 484 (App. Div. 2008)).

Plaintiff has not alleged ascertainable loss. Regardless of whether the User's Guide is considered, Plaintiff has failed to allege what it was "promised" by Samsung. Although Plaintiff claims entitlement to all of the toner in the cartridge it purchased, the FAC does not allege any facts whereby Samsung represented to Plaintiff that Plaintiff would have access to all that toner. Nor does Plaintiff allege any difference in value between the toner cartridges that Plaintiff allegedly purchased and the toner cartridges as represented by Samsung. In addition, to the extent the User's Guide is considered, it only further confirms that Plaintiff simply fails to allege (1) what Samsung allegedly promised to Plaintiff in terms of use of the toner, (2) what Plaintiff actually received from the toner cartridge, and (3) how what Plaintiff received was less valuable than what Samsung represented to Plaintiff. Since Plaintiff does not allege that it received less, in terms of page yield, than what Samsung represented Plaintiff would receive, Plaintiff cannot demonstrate "ascertainable loss." See Arcand, 2009 WL 4261085, at *11-14.

## V.    CLAIMS UNDER OTHER STATES' CONSUMER PROTECTION STATUTES SHOULD BE DISMISSED

Samsung does not seek to reargue the Court's conclusion that any determination of whether this Plaintiff lacks standing to assert claims for violation of other states' consumer fraud statutes (set forth at Count II) should be deferred until after class certification issues have been resolved. See WWK, 2009 WL 4730187, at *2. Samsung argues only that, to the extent this

26

Court applies the ICFDBPA and dismisses the NJCFA claim, it should also dismiss the claims of the other states' consumer fraud acts (i.e., California, Florida, Illinois, Michigan, Missouri, New York, and Washington) because under choice of law principles, these other states have no relationship, let alone a significant relationship, to the Plaintiff or this case. Moreover, to the extent the Court dismisses Plaintiff's ICFDBPA claim (or, if applicable, its NJCFA claim) for failure to state a claim or for lack of particularity under Rule 9(b), it should also dismiss the consumer fraud claims at Count II. See Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 659 (3d Cir. 1998), abrogation on other grounds recognized by Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000) (dismissing putative class action complaint under Rule 9(b) given named plaintiffs' failure to plead fraud with particularity); see also In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, No. 06-5774, 2009 WL 2043604, at *16 (D.N.J. July 10, 2009) ("[i]n determining whether a plaintiff has adequately pled injury, a court must evaluate the allegations contained in the complaint respecting the named plaintiffs.").

27

## <u>CONCLUSION</u>

For the foregoing reasons, Samsung Electronics America, Inc. respectfully requests that this Court grant this Motion and dismiss the First Amended Complaint with prejudice.

Dated:     February 12, 2010

<div style="margin-left:40%">

Respectfully submitted,


    /s/ Steven F. Gooby
Robert A. Assuncao
Steven F. Gooby
ANSA ASSUNCAO, LLP
Two Tower Center Blvd., Suite 1600
East Brunswick, New Jersey 08816
(732) 993-9850

       -and-

Joseph G. Falcone
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100

Attorneys for Defendant
Samsung Electronics America, Inc.

</div>